764 So.2d 1055 (2000)
Trent WINCH
v.
DOUBLE M, INC.
No. 99-1793.
Court of Appeal of Louisiana, Third Circuit.
April 5, 2000.
Writ Denied June 16, 2000.
*1057 Emma J. Devillier, Kleinpeter, Schwartzberg & Stevens, Morgan City, LA, Counsel for Plaintiff/Appellant.
Jeffrey J. Warrens, Egan, Johnson, Stiltner, Baton Rouge, LA, Counsel for Defendant/Appellee.
Court composed of Judge ULYSSES GENE THIBODEAUX, Judge OSWALD A. DECUIR and Judge ELIZABETH A. PICKETT.
THIBODEAUX, Judge.
In this workers' compensation dispute, Trent Winch appeals a judgment which held that his claims were not compensable.
For the following reasons, we reverse the judgment of the Office of Workers' Compensation and award Trent Winch weekly compensation in the amount of $7,659.20 and medical benefits in the amount of $11,230.36 and court costs.

I.

ISSUE
We shall consider whether the Office of Workers' Compensation erred in finding that claimant, Trent Winch, failed to meet his burden of proof that his illness was work-related.

II.

FACTS
After graduating from high school, Trent Winch began working for Double M, Inc. in May 1997. While employed at Double M, Winch worked as a roustabout, performing various jobs at several locations. On July 16, 1997, Winch became ill while at work. He had difficulty breathing and he experienced weakness and lightheadedness; however, he remained at work. He began spitting up blood, and on July 23, he was forced to seek medical treatment at Dauterive Hospital in New Iberia, Louisiana, as his breathing became severely impaired. This was Winch's last day of employment at Double M, Inc.
Winch was subsequently admitted into the hospital by Dr. Douglas Sagrera. While in the hospital, Winch was treated with antibiotics. His condition did not improve as expected. Dr. Sagrera referred Winch to Dr. J. Darvin Hales, a pulmonary disease specialist. Winch remained under the supervision and care of Dr. Hales for approximately six months and eventually made a full recovery. Upon the advice of Dr. Hales, Winch did not return to work at Double M after his recovery. He was able to re-enter employment in March 1998 with Continental Emsco after being unemployed because of his illness.
Dr. Hales opined that Winch's illness was work-related and was either caused by exposure to a toxin or was an allergic reaction to some other substance while at work. Double M retained Dr. Robert Jones, a pulmonary specialist, to evaluate Winch's case. Dr. Jones was of the opinion that Winch's condition was infectious and, thus, not work-related.
Winch filed suit against Double M seeking workers' compensation benefits. The workers' compensation judge concluded that Winch did not satisfy his burden of proof that his illness was work-related and, accordingly, rejected his claim. Winch now appeals, claiming that greater weight should have been given to the opinion of his treating physician, Dr. Hales, than that of Dr. Jones, who was hired by Double M, Inc.

III.

LAW AND DISCUSSION

Standard of Review
The determination of whether a workers' compensation claimant has satisfied his burden of proof on the issue of whether his illness is work-related is essentially a factual one and is susceptible to the manifest error standard of review. An appellate court should not disturb the findings *1058 of an administrative law judge in a workers' compensation matter unless they are clearly wrong or manifestly erroneous. Davison v. Horseshoe Casino, Inc., 31,166, p. 4 (La.App. 2 Cir. 10/28/98); 720 So.2d 785, 787. The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).

Legal Determination of Illness
Whether an inexplicable condition or illness is substantial enough to render a claimant disabled and to entitle him to benefits is a question of fact which is to be decided by the trial court. A medical estimate of disability must yield to the legal test thereof. Lucas v. Insurance Co. of North America, 342 So.2d 591 (La.1977). Therefore, it is under the manifest error standard of review that we find the workers' compensation court erred in its factual findings.
In Johnson v. NATCO, 94-1236, p. 4 (La.App. 3 Cir. 3/1/95); 651 So.2d 494, 496, this court relied on the following principles:
The finding of disability within the framework of workers' compensation law is a legal rather than purely medical determination. It is the totality of the evidence, both medical and lay testimony, which must be examined by the trial court in making its determination on the question of disability and it is the function of the court to assess the weight to be accorded such testimony. The opinion of a physician or other medical expert does not necessarily establish the existence of vel non a legal disability and the court may accept or reject such opinion testimony depending upon what impression the qualifications, credibility and testimony the particular expert makes upon the court.
(citation omitted) (emphasis in text)
Contrary to the opinion of the hearing officer, the finding of a debilitating illness is a legal rather than a medical conclusion. Causation is a legal determination; although a trial court should consider medical testimony, it should not rely on it exclusively.
It is these principles which undergird our consideration of this case.

Medical Causation
In a workers' compensation case, the employee has the burden of proving that he has a disability and that there is a causal relationship with the work-related incident by a preponderance of the evidence. The claimant's recovery is not dependent on the experts' determination of the exact cause of the disability. It is only necessary that the complaint show by a preponderance of the evidence that the employment somehow caused the disability. Lucas, 342 So.2d 591. (emphasis added).
A claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. Lucas at 596 (La.1977).
Lucas sets forth a three-tier test which Winch must prove by a preponderance of the evidence in order to benefit from the presumption of causation principle. In applying the general precepts of Lucas, Winch must first prove that he was well prior to his employment at Double M, Inc. Next, he must establish that following his employment at Double M, symptoms of his disabling illness or condition appeared and continuously manifested themselves afterwards. Finally, Winch must show a reasonable *1059 possibility of causation between his employment and his claimed injury.
In Lucas, the plaintiff's two previously fractured fingers became swollen and discolored as a result of extended use in driving a truck. The fact that only the previously injured fingers were affected lead to a logical conclusion that the injury caused the problem, thus making the application of the presumption of causation reasonable. We find this reasoning to be logically applicable in this case.
Logic leads this court to the conclusion that although Winch was employed by the defendant for less than one year, his illness surfaced only after working for Double M. The record reveals that Winch was well before his employment at Double M, Inc., he subsequently became ill during his employment there, and he became well when his employment at Double M ceased. Compounded with this, Double M, Inc. failed to present contradictory evidence that Winch's illness was not work-related.
The evidence shows a reasonable possibility of causal connection between Winch's illness and his employment at Double M, Inc.; therefore, the workers' compensation judge erred in finding that Winch failed to satisfy his burden of proving that his illness was work-related.

Treating Physician's Testimony
Mr. Winch argues that the opinion of his treating physician, Dr. J. Darvin Hales, should have been given greater weight than the opinion of Dr. Robert Jones, a physician hired by Double M, Inc. who had never seen Winch. We agree.
As a general rule, the testimony of a treating physician should be given more weight than that of a physician who examined a claimant for diagnostic purposes. Johnson, 651 So.2d 494. Furthermore, "the positive findings of medical experts are to be afforded greater weight than negative findings as to the existence or not of a particular condition." Id. at 496.
In his June 29, 1998 deposition, Dr. Hales expressed that he was "the only person that's actually seen Trent." As such, he is the only person who could provide a sufficient final diagnosis.
According to Dr. Hales, "Trent's history was that he was a well kid before he got sick. As best as I recall, Trent's off-work behavior was not different than it was before. I mean, he still lived at home. He still smoked.... The only thing that changed in Trent's life was he recently went to work." Dr. Hales, upon further examination, stated, "[t]he only thing that changed was that at work, there were smells and fumes and chemicals at work; they are not at home. He got the illness." The fact that Winch eventually improved when he stopped working at Double M, Inc. and was at home, contributed to Dr. Hales' opinion that Winch was exposed to something at work that caused his condition. Based on this, Dr. Hales opined that Winch's condition was brought on by something that he was exposed to rather than something that happened spontaneously. He maintained, "[T]he whole gist of the thing was that there's a good possibility he got exposed to something, bottom line." Dr. Hales was uncertain as to what caused Winch's acute hypersensitivity pneumonitis/bronchiolitis obliterans; however, he could not exclude "an occupational exposure" and thought that such an exposure was "more likely than not." Since he thought it was a possibility that Winch's condition was work-related, he did not allow him to return to work until he knew for sure.
Dr. Hales concluded that it was likely that Winch had Bronchiolitis Obliterans with Organizing Pneumonia (BOOP) or hypersensitivity pneumonitis caused by exposure to some inhalant. Dr. Hales' diagnosis was buttressed by several physicians. He sent biopsy specimens to Dr. Ronald A. Welsh, a professor of pathology at Louisiana State University (LSU) Medical Center in New Orleans. Dr. Welsh's impression was that Trent had BOOP, which "can *1060 be caused by a wide variety of conditions." Dr. Boyd Snellgrove observed and affirmed that the description of Winch's symptoms was consistent with BOOP. Also, an LSU Medical Center panel of ten to fifteen pulmonologists and six pathologists reviewed the very unusual CAT scans, which suggest a bronchiolitis, and the particulars of Winch's case. The panel came up with the differential which included BOOP, panbronchiolitis, or respiratory bronchiolitis. Dr. James Montesinos was the only member of the panel who did not favor BOOP; he favored panbronchiolitis or respiratory bronchiolitis. Dr. Hales synthesized all the suggestions of the physicians and determined that in his medical opinion, Winch had BOOP.
The only other physician to disagree with Dr. Hales was Dr. Robert Jones, who was hired by Double M for evaluation purposes. He was the only doctor who definitively stated that the cause of Winch's illness was infectious. He did not physically examine Winch.
We find Dr. Jones' diagnosis unpersuasive. The LSU panel did not conclude that Winch's illness resulted from infectious disease. They determined either panbronchiolitis, respiratory bronchiolitis, or bronchiolitis obliterans (BOOP).
Dr. Hales, in his April 6, 1999 deposition, reiterated that Winch's illness was as likely to be due to occupation exposure as to anything else. He further observed that the proof was "pretty dramatic" that bronchiolitis was more apt to be caused by inhalation agents than it is by infectious diseases.
It is axiomatic that Dr. Hales' corroborated testimony is given greater weight than that of Dr. Jones' testimony. Dr. Hales is the only physician who treated Winch; therefore, we conclude that it is safe to infer that he is the only physician who can give a conclusive diagnosis regarding Winch's condition. Dr. Jones' unsubstantiated observations are, at the most, mere abstractions based exclusively on radiographs and CAT scans conducted on Winch.
Double M, Inc. contends that since Winch claims an occupational disease which was contracted after being employed less than twelve months, a presumption exists that it did not arise in the course and scope of one's employment. Furthermore, the employee must establish compensability under these circumstances by an "overwhelming preponderance of the evidence." It cites La.R.S. 23:1031.1(D). To the extent that Winch's condition is an occupational disease or illness, we conclude that this somewhat heightened burden was met.
We find the workers' compensation judge erred in accepting the testimony of Dr. Robert Jones in preference to that of Dr. J. Darvin Hales.

Awards
Trent Winch had an average weekly wage of $287.21. He is, therefore, entitled to the stipulated workers' compensation rate of $191.48 which is to be paid in accordance with his last day of employment at Double M, Inc., July 23, 1997, and his start date with Continental Emsco, March 25, 1998. This amount totals $7,659.20.
Winch is also awarded all reasonable and necessary medical expenses in the amount of $11,230.36 which is to be allocated as follows:

Dauterive Hospital ........................$ 8,411.65
Radiology Association of Iberia............$ 662.00
Dr. G. Douglas Sagrera ....................$ 244.28
Pecot, Padgett and Jolissaint Pathology ...$ 143.00
Dr. J. Darvin Hales........................$ 1,710.00
Prescriptions .............................$ 59.43
 ___________
Total .................................... $ 11,230.36

IV.

CONCLUSION
Based on the foregoing analysis, we reverse the judgment of the Office of Workers' Compensation.
*1061 All costs are assessed to the defendant, Double M, Inc.
REVERSED AND RENDERED.