839 So.2d 1079 (2003)
Debra JACKSON
v.
CONAGRA POULTRY COMPANY.
No. 02-492.
Court of Appeal of Louisiana, Third Circuit.
March 5, 2003.
*1081 George A. Flournoy, Flournoy, Doggett & Losavio, Lafayette, LA, for Plaintiff/Appellant Debra Jackson.
John B. Saye, Hayes, Harkey, Smith, Cascio, Monroe, LA, for Defendant/Appellee Conagra Poultry Company.
Court composed of ULYSSES GENE THIBODEAUX, JOHN D. SAUNDERS, MICHAEL G. SULLIVAN, GLENN B. GREMILLION and ELIZABETH A. PICKETT, Judges.
PICKETT, J.

FACTS
Debra Jackson began working for ConAgra Poultry Company in September 1996. Her job consisted of removing bones and fat from chicken thighs with heavy scissors approximately eight or nine inches long. She performed this job eight hours each night.
On February 4, 1997, while performing her job duties, her right arm and hand became swollen and painful. She reported this to her supervisor who sent her to see the night nurse, Debra Walker. Ms. Walker applied an ice pack for fifteen minutes, gave her some ibuprofen, and instructed her to return to her work area.
The next night, Ms. Jackson's arm and hand again became swollen and painful. She again reported to the night nurse who referred her to the day nurse, Joanne Dowden. Ms. Dowden gave her ibuprofen. Ms. Jackson asked Ms. Dowden for permission to see a doctor. Ms. Dowden denied that request, stating there were other things she wanted to do for Ms. Jackson before she saw a doctor.
Ms. Jackson's problems continued. She continued to see Ms. Dowden for the same complainther arm and hand would become swollen. She saw Ms. Dowden approximately six more times between her initial complaint of February 4, 1997, and April 1997. She kept asking permission to see a doctor, but this was denied. It was her understanding if she saw a doctor on her own she would be fired. Ms. Dowden finally referred her to Dr. James Knecht.
Ms. Jackson saw Dr. Knecht on April 30, 1997, complaining of pain in the right shoulder and hand, with the right hand "going to sleep" at times. His findings revealed a normal neurological exam, but he noted mild spasm over the right trapezius muscle and mild swelling and tenderness of the flexor tendons of the right wrist. He diagnosed spasm and inflammation of the right trapezius muscle, right wrist flexor tendinitis, and suggested ruling out early right median nerve irritation. He prescribed wrist splints for both hands along with medication, and restricted her to light duty work with restricted use of the right upper extremity for two weeks.
Dr. Knecht ultimately referred Ms. Jackson to Dr. Michael Haynie, an orthopedic doctor in Shreveport. Dr. Haynie believed Ms. Jackson could have carpal tunnel syndrome. He recommended she see Dr. Marion Milstead, an orthopedic specialist. Dr. Milstead detected a positive Tinel's sign over the supra and infra clavicular regions and over the cubital tunnel and the carpal tunnel, as well as a positive Adson's test bilaterally. He noted all electromyographic (EMG) tests were normal. Dr. Milstead found evidence of mild ulnar nerve neuritis at the elbow and thoracic outlet syndrome. He believed her condition was permanent. He recommended she avoid elevation of the arms and use of the hands above shoulder height. He placed her on light duty.
Having received work restrictions from Dr. Knecht and later from Dr. Milstead, ConAgra removed Ms. Jackson from her deboning position and assigned her to various light duty positions. Ms. Jackson was first placed in the cafeteria where her duties were to clean the cafeteria and the *1082 restrooms. Later, Ms. Jackson worked as a manifestor, a job she could perform without the use of her right hand. When that position was phased out, she worked as a scanner. She continued working light duty positions until her employment was terminated on January 5, 2001. At that time, ConAgra informed her that she, along with other employees, was being laid-off. She asked to be reassigned to the paw room. That request was denied. There is no evidence ConAgra offered any type of vocational rehabilitation. ConAgra never offered assistance to help her find other employment. Ms. Jackson has been unable to find work since that time.
We note the position Ms. Jackson held as a scanner was not abolished. Another employee replaced Ms. Jackson in that position.
Following a trial on the merits, the workers' compensation judge found that Ms. Jackson failed to prove her condition was the result of either a work-related accident or an occupational disease. A motion for new trial was denied. It is from this judgment Ms. Jackson appeals.

ASSIGNMENTS OF ERROR
The appellant sets forth two assignments of error:
1) Because the facts were not disputed, i.e., visible signs of a right arm injurious condition had appeared during the course and scope of her employment and continued and all treating physicians agreed that the right arm condition was disabling and restricted her work to light duty, the hearing officer erred, as a matter of law, by ignoring the presumption of causation under these circumstances and/or by refusing to infer reasonably from the records that the work environment had brought on plaintiff's occupational disease, which, in turn, had caused plaintiff's disability.
2) The hearing officer erred in denying plaintiff's motion for new trial and refusing to consider the proffered reports of the treating physicians concerning causation.

DISCUSSION
To recover workers' compensation benefits, the appellant bears the burden of proving that she either sustained personal injury as the result of an accident arising out of, and in the course and scope of, her employment or that she contracted an occupational disease. La.R.S. 23:1031 and 23:1031.1. Ms. Jackson did not prove she sustained a "personal injury by accident." Under La.R.S. 23:1021(1), an accident is defied as "an unexpected or unforseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." (Emphasis added.)
Notwithstanding this definition, it has been recognized that La.R.S. 23:1021(1) does not exclude from coverage those workers "who are worn down by their work rather than immediately crippled by it." Dyson v. State Employees Group Benefits Program, 610 So.2d 953, 956 (La.App. 1 Cir.1992). However, the claimant must still "identify the event marking the time when one can identify an injury." Id at 955.
In her disputed claim for compensation, Ms. Jackson did not allege any facts suggesting an accident. She alleged she was disabled by the "gradual onset of carpal tunnel both hands/wristsworse in right hand." No evidence was presented regarding a specific, employment-related event that precipitated her symptoms. Accordingly, we find no error in the trial *1083 court's conclusion that she failed to prove a "personal injury by accident."
We disagree, however, with the finding by the worker's compensation judge that Ms. Jackson has failed to carry her burden of proving her disability was caused by an occupational disease. La. R.S. 23:1031.1(B), in part, defines an occupational disease as "only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome."
A claimant who proves a disabling occupational disease is entitled to workers' compensation benefits in the same manner as one who has sustained a personal injury by accident arising out of and in the course of his employment. La.R.S. 23:1031.1(A).
Because Ms. Jackson's symptoms occurred within the first twelve months of her employment with ConAgra, she must overcome the statutory presumption set forth in La.R.S. 23:1031.1(D), that her employment did not cause her condition. Although that statute was amended by Acts 2001, No. 1189 § 1, of the legislature, the provisions applicable to Ms. Jackson are those in place prior to the amendment. Prior to the amendment, La.R.S. 23:1031.1(D) read as follows:
Any occupational disease as herein listed contracted by an employee while performing work for a particular employer in which he has been engaged for less than twelve months shall be presumed to be non-occupational and not to have been contracted in the course of and arising out of such employment, provided, however, that any such occupational disease so contracted within the twelve months' limitation as set out herein shall become compensable when the occupational disease shall have been proved to have been contracted during the course of the prior twelve months' employment by an overwhelming preponderance of the evidence.
Whether the claimant has proved the existence of a disabling, occupational disease is a question of fact subject to the manifestly erroneous or clearly wrong standard of review. Peck v. Procter and Gamble Mfg. Co., 586 So.2d 714 (La.App. 3 Cir.); writ denied, 590 So.2d 86 (La.1991). We find the worker's compensation judge erred in concluding Ms. Jackson failed to carry her burden of proving her disability is a result of an occupational disease.
The unrefuted evidence in this case established that the scissors Ms. Jackson used to de-bone the chicken and strip the fat were long and heavy. She used them eight hours a night, every night. She had no problem with her arm or hand prior to her employment with ConAgra as a deboner. The problem with the swelling and pain in her arm manifested itself while she was on the job, using these heavy scissors repetitively. She never had problems with the pain and swelling except through the use of the scissors at work.
The medical records established Ms. Jackson does have a disabling physical injury. The worker's compensation judge was correct in his conclusion that no doctor diagnosed carpal tunnel syndrome. There was, however, a diagnosis of a disabling injury.
Dr. Knecht diagnosed spasm and inflammation of the right trapezius muscle, right wrist flexor tendinitis, and suggested ruling out early right median nerve irritation. He referred Ms. Jackson to Dr. Haynie, who suspected, but did not diagnose, carpal tunnel syndrome. Ms. Jackson was seen by Dr. Milstead who found evidence of mild ulnar nerve neuritis at the elbow and also thoracic outlet syndrome. Dr. Milstead made objective findings of injury.
*1084 Dr. Milstead deemed this condition permanent. Dr. Genoff ordered an EMG, which was normal, but found abnormal findings in the nerve conduction study. He ultimately found a slowing of the median nerve across the elbow.
All the physicians who examined Ms. Jackson agreed she was limited to light duty with restricted use of her upper right extremity. When placed on light duty, and not required to use her right arm, Ms. Jackson was able to perform her job requirements.
After reviewing the totality of the evidence, we find Ms. Jackson has overcome the presumption of La.R.S. 23:1031.1(D) and established by overwhelming evidence a disabling occupational disease arising from her employment with ConAgra.
In order to be entitled to Supplemental Earnings Benefits, the claimant must prove her inability to earn 90% of her pre-injury wages. The appellee argues Ms. Jackson can clearly earn 90% of her pre-injury wage because she returned to work at a light duty position. The appellee's argument is misplaced.
In the matter before us, Ms. Jackson's employment was terminated January 5, 2001. The light duty position she held was given to another employee. The employer argues that this was the result of a lay-off. We note, however, the employer refused to offer her a position available in the paw room which she could perform. Ms. Jackson was willing to move from the day shift to the night shift to accept this position.
The employer offered no evidence that a position was offered to Ms. Jackson that she could perform but she refused that position. The employer has offered no vocational rehabilitation to assist Ms. Jackson in returning to work. There has been no showing of any type of work in the geographical region that Ms. Jackson can perform. Although she has made an effort to return to work, she has been unable to secure a job within her restrictions.
It has clearly been established that, because of her employment related disability, Ms. Jackson is unable to earn 90% of her pre-injury wages. The parties stipulated that her average monthly wages were $1,175.94. She is entitled to receive SEB benefits from January 5, 2001, in the amount of $180.91 per week.
We further find Ms. Jackson is entitled to both penalties and attorney fees for ConAgra's failure to timely pay benefits pursuant to La.R.S. 23:1201(F). We award penalties in the amount of $2,000.00 and attorney fees in the amount of $5,000.00 for work done at the trial and in this appeal.

DECREE
ConAgra is ordered to pay to Ms. Jackson SEB benefits in the amount of $180.91 per week beginning on January 5, 2001, plus interest. Further, they are ordered to pay a penalty in the amount of $2,000.00, and attorney fees in the amount of $5,000. Costs of this appeal are assessed against ConAgra.
REVERSED AND RENDERED.
SULLIVAN, J., dissents and assigns written reasons.
SULLIVAN, J., dissenting.
I respectfully dissent from the majority opinion. I do not find manifest error in the trial court's ruling that claimant failed to overcome the presumption of La.R.S. 23:1031.1(D) by proving that she suffered an occupational disease arising out of her employment. None of the medical evidence introduced at trial related claimant's symptoms to her work activities.