# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


**04-427**


**KERRY ANDERSON DOUMITE**

**VERSUS**

**KVHP - FOX 29**

**********
APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION
DISTRICT 03, PARISH OF CALCASIEU, NO. 02-08593
HONORABLE SAM LOWERY, PRESIDING
**********

**SYLVIA R. COOKS**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Marc T. Amy and John B. Scofield,[*] Judges.


**AFFIRMED.**


Mark Zimmerman
910 Ford Street
Lake Charles, LA   70601
(337) 433-1414
COUNSEL FOR PLAINTIFF-APPELLEE:
    Kerry Anderson Doumite


Robert J. May
Juge, Napolitano, Guilbreau, Ruli & Frieman
3838 N. Causeway Blvd., Suite 2500
Metairie, LA  70002
(504) 831-7270
COUNSEL FOR DEFENDANT-APPELLANT:
    KVHP - Fox 29

---

[*] John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge *Pro Tempore.*

**COOKS, Judge.**

The employer, KVHP - Fox 29, appeals the judgment of the Office of Workers' Compensation awarding the claimant, Kerry Anderson Doumite, disability benefits, penalties and attorney fees for a work-related accident. For the following reasons, we affirm.

## FACTS

From July 12, 1999 through August 14, 2002, Kerry Anderson Doumite worked as the news director and weeknight anchor for KVHP - Fox 29 in Lake Charles. Part of her work duties involved script writing and editing of stories for the newscasts.

In March of 2002, Doumite began experiencing pain in her right shoulder and arm. On May 24, 2002, KVHP's personnel director noticed Doumite's physical problems and recommended she seek medical treatment. Doumite was seen that day at Hunter McGuire Medical Center for right arm pain. She was treated on a number of occasions at Hunter McGwire by Dr. Kenneth Burton. Dr. Burton advised Doumite to take time off from work to allow her physical problems to improve. He also recommended that the employer take steps to improve her work station which he believed was not ergonomically efficient and was overly stressful on her physically. Doumite did not take time off from work and received weekly injections to help her cope with the pain. The employer did not improve Doumite's work station as recommended by Dr. Burton.

On August 2, 2002, Doumite sent a letter of resignation to her supervisor stating "the work environment at KVHP has become so hostile that it is impossible for me to manage effectively and efficiently." She also requested in her letter of resignation that she be allowed to "continue with the medical treatment in my arm,

which was injured on the job, that my workers' compensation will continue to pick up the costs of medical care until my arm and shoulder are healed." However, before the effective date of her resignation, Doumite resigned her employment on August 14, 2002, stating she could no longer work through the pain.

After her resignation, Doumite was diagnosed by Dr. Kevin Gorin, a pain management specialist, with thoracic outlet syndrome. He felt Doumite was capable of working, but she could not perform her previous duties. Dr. Gorin felt Doumite's shoulder and arm problems were work-related. At the employer's request, Doumite was examined by Dr. James Perry, an orthopedic specialist. He disagreed with Dr. Gorin's finding of thoracic outlet syndrome, and found Doumite suffered from a cervical strain which he associated with her work duties. Dr. Perry released Doumite to return to full-duty work.

Doumite sought workers' compensation benefits. A report from Dr. Burton was sent to the medical case manager for the employer. In the report, Dr. Burton noted the poor arrangement of Doumite's work station and its effect on Doumite's physical condition. Doumite was denied benefits by the claims adjuster. A 1008 disputed claim form was filed with the Office of Workers' Compensation (OWC) on November 15, 2002.

It was stipulated at trial that no indemnity benefits were paid, with the employer paying some medical expenses until July, 2003. The employer denied that a work injury occurred under the Louisiana Workers' Compensation Act, because Doumite could not identify an actual, identifiable, precipitous event that caused her symptoms. The workers' compensation judge determined that Doumite established a compensable work-related accident, finding as follows:

> The defendants cite a long and impressive list of cases, all which stand for the proposition that a gradual onset of symptoms do not

provide the requisite element of accidental injury under the statutes. The defendant's interpretation of events is that the claimant's condition slowly, gradually deteriorated and got progressively worse to the point that her employer suggested she seek medical treatment.

Both counsel, although they never said so in so many words, seem to argue that gradual deterioration is not an accident as defined by the statute; and the court would certainly agree. But the claimant's attorney does not concede that this was a gradual deterioration. Indeed, he insists that it was not. He urges that in line with Third Circuit reasoning, that the plaintiff identified with particularity the time, place, and manner in which she was injured.

Ms. Doumite, under lengthy examination and sharp cross-examination, was unwavering and steadfast in her insistence that her inability to continue to work was triggered by a definable, singular event or circumstance; notably, the dramatically increased workload which required her to function at a speed, pace, and duration which she had heretofore not done.

Counsel argues there was nothing gradual about this. Because of the corporate decisions involving the television station where she was an anchor woman and news editor, she simply did more than she had done before and was required to do it in a fashion that did not accommodate the required new pace and load.

Her testimony was that she just continued to get worse and worse; it was that the singular acceleration of her duties, indeed the expansion of the duties, caused what she termed near total incapacitation. True, she could not point to a single moment, a precise nanosecond or a shining moment in time when her current condition began; but she does state with clarity the time period involved; namely, a two-week period of unprecedented increase in workload. She was equally clear that part of the cause of her disability was the configuration of her computer set up. Her testimony was that a combination of excessive work, coupled with a very awkward arrangement of the computer system, was the direct cause of her condition.

Nobody from the television station contradicted her description of the workplace. Nobody from the television station contradicted her description of the workload.

Both examining physicians, while not in total agreement as to the diagnosis and duration of the disability, are in essential agreement that the work stress precipitated the problem.

This case necessarily involves the evaluation of the credibility of the claimant. She presents herself as a 44-year-old TV anchor woman, news director, with impressive credentials and resume. Her answers were clear and to the point, and I detected no effort on her part to equivocate or mislead in any way. She was forthcoming in her responses, even those which were related to circumstances surrounding her resignation. And, clearly, there were activities in the corporate atmosphere which may have clouded matters here; but they don't detract from the issue at hand and are certainly not disposit[ive] of the issue of whether the claimant suffered a work related injury and disability.

In short, the claimant points to a particular time period and work activity and all the doctors agree caused her shoulder problems and, thus, her disability. For this reason, the court finds that she suffered a compensable accident, . . .

The WCJ determined Doumite was only partially disabled and thus entitled to supplemental earnings benefits, which he awarded at the maximum rate to which she was entitled beginning August 14, 2002. The WCJ also found Doumite was entitled to all reasonable and necessary medical benefits, along with an evaluation by a thoracic outlet syndrome specialist in Dallas. Lastly, the WCJ found the employer had not reasonably controverted the claim and awarded $6,000.00 in penalties and $10,000.00 in attorney fees.

The employer appealed the OWC judgment, contending the WCJ erred in finding Doumite suffered a work-related accident. It also argues the WCJ erred in awarding penalties and attorney fees.

**ANALYSIS**

A workers' compensation claimant has the burden of proof to establish that a work-related accident occurred by a preponderance of the evidence. *Bruno v. Harbert International, Inc.*, 593 So.2d 357 (La.1992). In determining whether a worker has shown by a preponderance of the evidence that an injury-causing accident occurred in the course and scope of employment, the trier of fact is expected to focus on the issue of credibility because, absent contradictory circumstances and evidence,

a claimant's testimony is afforded great weight. *Id.* "A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident, and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Id.* at 361.

This court has held it is "immaterial" that a claimant cannot identify the exact movement or place in time when her pain began. *McCall v. Wal-Mart Stores, Inc.*, 02-1343 (La.App. 3 Cir. 3/5/03), 846 So.2d 832, *writ denied*, 03-1329 (La. 9/19/03), 853 So.2d 639, 03-1343 (La. 9/19/03), 853 So.2d 641. "'[T]he 'actual, identifiable, precipitous event' may include a routine movement or task that the employee regularly performs, if the claimant is able to identify with some particularity as to time, place and manner, the objective manifestation of the accidental injury.'" *McCall*, 846 So.2d at 835-36, *quoting Thompson v. Orleans Parish Sch. Bd.*, 00-1230, p. 3 (La.App. 4 Cir. 3/21/01), 786 So.2d 128, 130.

In *Miller v. Christus St. Patrick Hosp.*, 03-1631 (La.App. 3 Cir. 4/21/04), 872 So.2d 574, this court allowed the recovery of disability benefits for a "routine movement such as typing on a laptop," when the claimant was able to identify the time, place and manner of the event. We also noted the "jurisprudence holds that an 'actual, identifiable, precipitous event' does not exclude those instances where a work-related event, which may seem to be a customary or routine work activity, results in an injury to the employee." *Miller*, 872 So.2d at 578, *citing Richard v. Workover & Completion*, 00-794 (La.App. 3 Cir. 12/6/00), 774 So.2d 361.

The WCJ, as stated in its written reasons for judgment, applied the proper standard in determining whether or not Doumite sustained a work-related accident. The WCJ found Doumite, in accord with the jurisprudence, identified with

particularity the time, place, and manner in which she was injured. The record establishes that Doumite testified during a two-week period her work duties were increased which caused what she referred to as her "total incapacitation." She was also consistent that the configuration of her work station was a cause of her disability, and the medical evidence supported that contention. Her condition worsened until she eventually resigned. She immediately sought medical treatment, and was consistent in her reports to her treating physicians. The medical evidence, although it differed as to the exact injuries caused to Doumite, was consistent that the injuries were the result of her work at KVHP. Moreover, Doumite's testimony was corroborated by other evidence in the record, and the employer offered no evidence to discredit or cast serious doubt upon Doumite's contention that she suffered injury due to her work duties. Thus, considering the record as a whole, we find no fault with the factual findings of the workers' compensation judge that Doumite suffered an injury while engaged in the course and scope of her employment with KVHP. The employer argues, as it did below, that the issue in this case is whether Doumite suffered an "accident" as it is defined in the Louisiana Workers' Compensation Act. Under La.R.S. 23:1021(1), an "accident" is statutorily defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration."

We need not reach this argument because we are able to affirm the result reached by the trial court, but for different reasons. We find Doumite is entitled to recovery under La.R.S. 23:1031.1. This circuit has recognized that thoracic outlet syndrome is akin to carpal tunnel syndrome and is included as an occupational

disease under La.R.S. 23:1031.1. Louisiana Revised Statute 23:1031.1 provides in relevant part:

> An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.

The record indicates Doumite began experiencing pain in her right shoulder and arm. Her treating physician, Dr. Gorin, diagnosed thoracic outlet syndrome. Doumite was then examined by Dr. Perry on October 14, 2002, at the request of her employer. Dr. Perry testified Doumite complained of right shoulder pain, right arm pain and numbness. Doumite stated she had been suffering from these symptoms for about six months. It was Dr. Perry's impression Doumite's condition had developed gradually over a period of time. Upon examination, he found tenderness in the right subacromial bursa and pain with abduction, external rotation of her shoulder and pain with flexion of her shoulder. He reviewed an MRI of Doumite's cervical spine. He found disc dessication which he attributed to age. Dr. Perry's diagnosis was cervical pain syndrome and shoulder pain and he prescribed a regime of physical therapy, which Doumite followed. At the November 22, 2002 office visit, Dr. Perry testified, Doumite was still experiencing pain associated with her shoulder. Doumite returned to Dr. Perry on December 13, 2002. He found her complaints to be more in her shoulder than her neck and he recommended an MRI of the shoulder. He testified regarding the shoulder MRI results: "It has mild, degenerative change, degenerative change. So, she had some wear and tear, but nothing to the degree to explain the significant symptoms that would not respond to physical therapy. So because of that, I recommended another opinion." While he quarrels with Dr. Goran's diagnosis of

thoracic outlet syndrome, he does agree that her condition could have been partially aggravated by work.

Doumite's treating physician, Dr. Goran, diagnosed thoracic outlet syndrome and defined the condition, stating:

> [I]t merely implies the compression of blood vessels and/or nerve bundles in this region called the thoracic outlet where it would be right above the first rib, just inferior to the clavicle; and normally it's not something – the condition is not something which occurs spontaneously, but normally occurs in light of a cumulative, repetitive trauma. I will say that it is often misdiagnosed and perhaps even overdiagnosed because certain other syndromes can appear similar to it, such as lower cervical disc compression or patients with anomalies in their cervical nerve roots, which where sometimes a C6 or a C7 would appear as a C8 level of distribution of symptoms.

Dr. Goran provided a solid foundation for his diagnosis of thoracic outlet syndrome. He testified as follows:

> My initial exposure to the diagnosis or treatment of thoracic outlet occurred in my residency at University of Virginia where the majority of the patients that we saw with it were working in chicken processing plants and had a large Virginia staple of the economy, and those patients would have a recurrent motion for either killing or processing the chickens over and over again, day in and day out.
> . . . .
> And they would get, profoundly, swollen upper extremities with reproducible symptoms of pain and weakness in the fourth and fifth fingers of the affected limb. And the surgeon that I worked with there in my residency, actually was the one who – who was actually the physician who proposed and developed the transaxillary approach to the treatment of this condition. . . . So, I was able to see what I would consider to be quite a few cases of it because often some of the more difficult cases in the Country or the region were sent to this particular surgeon and he would send the patients to rehabilitation part of the program after their surgeries or in preparation for their surgeries. So, that's where I – that's how I got my exposure.

Dr. Goran has had much more experience dealing with this condition and we afford his testimony more weight than Dr. Perry, who dismissed thoracic outlet syndrome as a "smoky diagnosis" but was unable to definitively identify Doumite's

problem or treat her pain effectively.[1] In *Winch v. Double M, Inc.*, 99-1793 (La.App. 3 Cir. 4/5/00), 764 So.2d 1055, *writ denied*, 00-1271 (La. 6/16/00), 765 So.2d 339, this court has stated:

> As a general rule, the testimony of a treating physician should be given more weight than that of a physician who examined a claimant for diagnostic purposes. *Johnson*, 651 So.2d 494. Furthermore, "the positive findings of medical experts are to be afforded greater weight than negative findings as to the existence or not of a particular condition."

*Id*. at 1059

Moreover, there is no testimony in the record indicating Doumite suffered from one of the conditions specifically excluded by La.R.S. 23:1031.1 (degenerative disc disease, spinal stenosis, arthritis, mental illness, and heart-related or perivascular disease). In fact, Doumite's complaint of pain in her shoulder and arm supports the diagnosis of the treating physician, Dr. Gorin. We find the medical evidence preponderates in favor of the treating physician who found her thoracic outlet syndrome resulted from work related activity in an ergonomically inefficient work space.

In *Willis v. Dry Creek Nutrition Services*, 94-45 (La.App. 3 Cir. 6/1/94), 640 So.2d 708, the plaintiff was diagnosed with right shoulder impingement syndrome, thoracic outlet syndrome and later, carpal tunnel syndrome. The physician testified "[t]thoracic outlet syndrome is a pinched nerve, much like carpal tunnel, but just occurring in a different location. It occurs up underneath the collar bone – right at the base of the neck – where a large group of nerves, called the brachial plexus comes underneath the collar bone." *Id*. at 710. The physician found the plaintiff's condition was work related and common in occupational related repetitive motion. This court,

---

[1] The employer did not move, under *Daubert,* to challenge the testimony of Dr. Goran regarding thoracic outlet syndrome as a recognized diagnosis

citing La.R.S. 23:1031.1(B), found plaintiff met her burden of proof and affirmed the trial court's award of compensation.

In *Jackson v. ConAgra Poultry Company*, 02-492 (La.App. 3 Cir. 3/5/03), 839 So.2d 1079, *writ denied*, 03-986 (La. 5/30/03), 845 So.2d 1054, the plaintiff was diagnosed with mild ulnar nerve neuritis at the elbow and thoracic outlet syndrome. The trial court allowed recovery under La.R.S. 23:1021(1). This court found the trial court erred in applying this provision of the workers' compensation statute because the plaintiff was unable to identify an "accident." This court instead allowed recovery under La.R.S. 1031.1(B) finding the statute does not exclude from coverage "those workers 'who are worn down by their work rather than immediately crippled by it.'" *Id.* at 1082. The *Jackson* court stated:

> The unrefuted evidence in this case established that the scissors Ms. Jackson used to de-bone the chicken and strip the fat were long and heavy. She used them eight hours a night, every night. She had no problem with her arm or hand prior to her employment with ConAgra as a deboner. The problem with the swelling and pain in her arm manifested itself while she was on the job, using these heavy scissors repetitively. She never had problems with the pain and swelling except through the use of the scissors at work.
> The medical records established Ms. Jackson does have a disabling physical injury. The worker's compensation judge was correct in his conclusion that no doctor diagnosed carpal tunnel syndrome. There was, however, a diagnosis of a disabling injury.

*Id.* At 1083.

In *Dibler v. Highland Clinic*, 27,274 (La.App. 2 Cir. 9/27/95), 661 So.2d 588, the plaintiff was diagnosed with tardy ulnar palsy, thoracic outlet syndrome and carpal tunnel syndrome. The appellate court rejected the notion that only carpal tunnel syndrome is recoverable as an occupational disease. "We therefore find no merit in the employer's contentions that only the CTS may be an occupational disease and that none of the three afflictions were caused by Ms. Dibler's work activities." *Id.* at 592. The court noted, "[w]ork-related carpal tunnel syndrome is expressly

-10-

included as an 'occupational disease' in the statute. Neither tardy ulnar nerve palsy nor thoracic outlet syndrome is among the diseases expressly **excluded** from being classified as occupational diseases. § 1031.1B." *Id.* at 591. In conclusion, we find Dr. Goran's diagnosis of thoracic outlet syndrome credible. Doumite has sustained her burden of proving the stress at her job combined with the nature of her work contributed to her disabling condition. Additionally, we find, in accordance with the jurisprudence, thoracic outlet syndrome is an occupational disease; and, therefore, Doumite is entitled to recovery under the occupational disease provision of the workers' compensation statute.

## II.    *Penalties and Attorney Fees.*

KVHP also argues the WCJ erred in awarding penalties and attorney fees. We disagree. "[T]o determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La.12/1/98), 721 So.2d 885, 890. We review the workers' compensation judge's award of penalties and attorney's fees pursuant to the manifest-error standard. *Sterling v. Asplundh Tree Expert Co.*, 03-266 (La.App. 3 Cir. 10/1/03), 856 So.2d 125 *writ denied*, 03-3017 (La. 1/30/04), 865 So.2d 79.

KVHP refused to pay benefits based on its belief that no work-related accident occurred. However, both the claimant's physician and KVHP's physician concluded that Doumite's shoulder and arm problems were related to her employment. Further,

existing jurisprudence in Louisiana on the "no accident" defense relied upon by KVHP was sufficient to alert it that its position was not reasonable nor legally supported. Accordingly, we find that the employer failed to reasonably controvert Doumite's claim for benefits. The WCJ was not manifestly erroneous in awarding Ms. Fontenot penalties and attorney's fees in this matter. This assignment is without merit.

Doumite seeks payment of additional attorney fees to compensate her counsel for work done on the present appeal. However, an answer requesting such relief was not filed. Failure to file an answer pursuant to La.Code Civ.P. art. 2133 precludes this court from awarding additional attorney fees.

## DECREE

For the foregoing reasons, the judgment of the Office of Workers' Compensation is affirmed. All costs of this appeal are assessed against appellant, KVHP - Fox 29.

**AFFIRMED.**

NUMBER 04-427

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

KERRY ANDERSON DOUMITE

VERSUS

KVHP - FOX 29

AMY, J., dissenting.

I respectfully dissent from the majority's determination that an affirmation is warranted. In my opinion, a reversal is required. The workers' compensation judge's reasons reveal a determination that the claimant's condition resulted from an "accident" pursuant to La.R.S. 23:1021(1). My review indicates no "unforeseen actual, identifiable, precipitous event happening suddenly or violently" as is required by that statute. Rather, the claimant's condition is more akin to the "gradual deterioration or progressive degeneration" which is specifically excluded from the definition of "accident." *Id.*

I further differ from the majority in that I do not find that an affirmation is warranted pursuant to La.R.S. 23:1031.1. First, as explained above, the workers' compensation judge's factual determinations in this case did not relate to whether the claimant suffered from an occupational disease. Accordingly, in my opinion, there are no factual findings regarding the presence of an occupational disease which are owed deference on appeal. Furthermore, I do not find that the claimant's condition meets the definition of occupational disease contained in La.R.S. 23:1031.1(B), which indicates that the disease/illness must be "due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease." Although the claimant may have been required to perform computer work in her position as news

director, and the work environment may have been stressful as she described, it cannot be said that the conditions alleged to have caused her condition are "characteristic of and peculiar to" that particular type of employment. In *Hymes v. Monroe Mack Sales*, 28,786, p. 7 (La.App. 2 Cir. 10/30/96), 682 So.2d 871, 876, the second circuit reasoned that the disease at issue "must originate from conditions in the employment that result in a hazard that distinguishes the employment in character from the general run of occupations." As I do not find this portion of La.R.S. 23:1031.1(B) satisfied, I would reverse the workers' compensation judge's determination.