# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-454


JACOB KIBODEAUX

VERSUS

JAN'S CONSTRUCTION COMPANY, INC.


**\*\*\*\*\*\*\*\*\*\***

WRIT FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 22-04048
MELISSA A. ST. MARY, WORKERS COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

## GARY J. ORTEGO
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Shannon J. Gremillion, D. Kent Savoie, Candyce G. Perret, Gary
J. Ortego, and Wilbur L. Stiles, Judges.


**REVERSED AND RENDERED.**


Savoie, J. concurs and assigns written reasons.
Perret, J. dissents and would affirm.

**William H. Parker, III**
**Allen & Gooch**
**2000 Kaliste Saloom Rd., #400**
**Lafayette, LA 70508**
**(337) 291-1000**
**COUNSEL FOR DEFENDANT APPLICANT:**
    **Jan's Construction Company, Inc.**

**Robert Mark Martina**
**Gallow & Jeffcoat, LLP**
**P. O. Box 61550**
**Lafayette, LA 70596**
**(337) 984-8020**
**COUNSEL FOR PLAINTIFF RESPONDENT:**
    **Jacob Kibodeaux**

**ORTEGO, Judge.**

Employer seeks supervisory writs from the judgment of the workers' compensation judge ("WCJ"), which denied its motion for summary judgment. We called this writ up for briefing and oral arguments. For the reasons discussed below, the writ is granted and made peremptory, reversing the WCJ's judgment and render judgment dismissing the claimant's case against his employer.

## FACTS AND PROCEDURAL HISTORY

Claimant, Jacob Kibodeaux (Kibodeaux), worked as a surveyor for Jan's Construction Company, Inc. (Jan's), an oilfield company. Although Kibodeaux was hired in Louisiana, as part of his job, he was required to travel out of state for contract jobs, and he was on-call 24 hours per day. On September 2, 2021, Kibodeaux was sent to a job in Kilgore, Texas, and stayed at a Comfort Inn Suites Hotel. On September 10, 2021, Kibodeaux began feeling ill, experiencing symptoms of fever, sweats, nausea, and vomiting. Kibodeaux reported his illness to his supervisor and made an appointment to see a doctor. Initially, Kibodeaux was diagnosed with pneumonia, but he was subsequently diagnosed with the Coronavirus Disease 2019 (COVID-19). Kibodeaux underwent a lengthy treatment, which included being hospitalized in the critical care unit from September 15, 2021 to November 30, 2021. Due to resulting permanent disabilities, Kibodeaux has not been able to return to work since September 2021.

Kibodeaux filed a workers' compensation claim against Jan's, alleging that he contracted COVID-19 on the job and that COVID-19 is a compensable occupational disease. Seeking dismissal of Kibodeaux's claim, Jan's filed a motion for summary judgment asserting that COVID-19 does not constitute a compensable occupational disease under the Louisiana Workers' Compensation Act (LWCA), La.R.S. 23:1021,

et seq. Following a hearing, the trial court denied the motion for summary judgment, and Jan's sought review of that ruling. This court, pursuant to La.Code Civ.P. art. 966(H), granted this writ for the limited purpose of briefing and oral argument.

## SUPERVISORY RELIEF

The jurisprudence has held that "the denial of a motion for summary judgment or partial summary judgment is an interlocutory judgment reviewable only on an application for a supervisory review from an appellate court." *Smith v. Tsatsoulis*, 14-742, pp. 1-2 (La.App. 4 Cir. 9/3/14), 161 So.3d 783, 784 (citations omitted), *writ denied*, 14-2018 (La. 10/9/14), 150 So.3d 889.

## STANDARD OF REVIEW

The Louisiana Supreme Court, in *Hogg v. Chevron USA, Inc.*, 09-2632, pp. 5-6 (La. 7/6/10), 45 So.3d 991, 996-997, relayed the following:

> Appellate courts review summary judgments *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Schroeder v. Board of Supervisors of Louisiana State University*, 591 So.2d 342 (La.1991). A court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966(B). The summary judgment procedure, which is designed to secure the just, speedy, and inexpensive determination of civil actions, is now favored in our law. LSA-C.C.P. art. 966(A)(2). Pursuant to that procedure:
>
>> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary

2

burden of proof at trial, there is no genuine issue of material fact.

LSA-C.C.P. art. 966(C)(2). As this court has explained, a "genuine issue" is a "triable issue," or one as to which reasonable persons could disagree. *Champagne v. Ward*, 03-3211, p. 5 (La.1/19/05), 893 So.2d 773, 777. A "material fact" is a fact, the existence or non-existence of which may be essential to a cause of action under the applicable theory of recovery. *Id.*

## LAW AND DISCUSSION

On appeal, Jan's argues the trial court should have granted its motion for summary judgment because there are no genuine issues of material fact as to its entitlement to have Kibodeaux's case dismissed.

Louisiana Revised Statutes 23:1031.1(B) (emphasis added) provides as follows:

> An occupational disease means only that *disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease.* Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.

In *Glover v. Fid. & Cas. Co.*, 10 So.2d 255, 257-258 (La.App. 2 Cir.1942), our sister court detailed relevant consideration as to whether an illness fits the definition of an occupational disease stating:

> Occupational disease has been defined as one wherein the cumulative effect of the employee's continued absorption of deleterious substances from his environment ultimately results in manifest pathology. In occupational disease any one exposure is inconsequential in itself, but the continued absorption is the factor which brings on the disease. It has also been defined as happening drop by drop, little by little, day after day, for weeks and months, and finally enough is accumulated to produce symptoms. It has its inception in the occupation and develops over a long period of time from the nature of the occupation.
>
> . . . . .

3

To connect a disease with the occupation or trade of an employee, it must be that the exposure that brings about the disease is generally and usually present whenever and wherever he is following his occupation or trade and cannot be so considered when the exposure which might cause the disease is for a limited time on a job under conditions which are unusual for one engaged in his occupation or trade and when brought about by an emergency.

The claimant bears the burden of proving, by a preponderance of the evidence, that the disease at issue is an occupational disease, if it was contracted during the course of his employment and was the result of the nature of the work performed. *Mitchell v. Alliance Compressors*, 05-1186 (La.App. 3 Cir. 4/5/06), 926 So.2d 127.

Jan's argues that pursuant to La.R.S. 23:1031.1(B), Kibodeaux's case is fatally flawed because he cannot satisfy the requirement that COVID-19 is a compensable occupational disease that is "characteristic of or peculiar to" the claimant's employment. As such, the burden shifts from Jan's, as the movant, to Kibodeaux, as claimant, to show he can carry his burden of proof at trial that his COVID-19 illness meets the definition of an occupational disease under La.R.S. 23:1031.1(B). Thus, for this summary judgment, pursuant to La.Code Civ.P. art. 966(C)(2), the burden is on Kibodeaux to show he can carry the evidentiary burden of proof at trial that COVID-19 is an occupational disease particular to his employment with Jan's.

Kibodeaux asserts that he contracted COVID-19 as a result of being required to travel out of state for work, be on call 24 hours a day, and stay in hotels near jobsites. Kibodeaux contends that these factors caused him to have a greater risk of exposure to COVID-19. Kibodeaux argues that although COVID-19 is not listed as a compensable occupational disease pursuant to the statute, certain jurisprudence supports his assertion that he contracted COVID-19 on the job and that COVID-19 claims fall under the general occupational disease statute, La.R.S. 23:1031.1.

4

One of the cases Kibodeaux relies on in support of his position is *Bacon v. Jefferson Par. Fire Dep't*, 22-510 (La.App. 5 Cir. 12/19/22), 356 So.3d 1128, *writ denied*, 23-70 (La. 3/28/23), 358 So.3d 507. In ruling on a motion for summary judgment in that case, the trial court found that while a deceased fireman's death from COVID-19 was not covered under the Heart and Lung Act, La. R.S. 33:2581, the fireman's widow could proceed with her alternative COVID-19 death benefit claim under the occupational disease statute (La.R.S. 23:1031.1) under the LWCA. However, the part of the court's ruling that allowed the COVID-19 death claim to proceed under the occupational disease statute in *Bacon*, that court did not directly address La.R.S. 23:1031.1. Thus, we find *Bacon* distinguishable, and afford it little weight.

Kibodeaux cites and states that in *Lucas v. Ins. Co. of N. Am.*, 342 So.2d 591, 596 (La.1977), the Louisiana Supreme Court held that "[a] claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards [. . . .]" Kibodeaux argues that he has met the three-tier test set forth in *Lucas,* 342 So.2d 591, and discussed by this court in *Winch v. Double M, Inc.*, 99-1793 (La.App. 3 Cir. 4/5/00), 764 So.2d 1055, *writ denied*, 00-1271 (La. 6/16/00), 765 So.2d 339. Kibodeaux contends that he is entitled to the presumption of causation because: 1) he was well before he started working for Jan's on September 2, 2021; 2) the symptoms of his disabling disease appeared and continuously got worse during his employment in September [2021]; and 3) medical records and testimony will show that there is a reasonable possibility that his disability was caused by his employment.

We find the factual circumstances before us are distinguishable from those in *Lucas* and *Winch*. *Lucas* clearly references a workers' compensation case wherein an accident occurred and not a disease. In *Lucas*, the Louisiana Supreme Court found a truck driver's disabled left hand was the result of injuries which he sustained in an *accident* while handling heavy pipe as part of his job. Workers' compensation cases wherein an accident occurs are not analogous with cases dealing with an occupational disease such as the one before us. Thus, Kibodeaux's reliance on *Lucas* is misguided.

In *Winch*, this court reversed the WCJ for giving greater weight to a claimant's treating physician than to the defendant's physician. The claimant's treating physician in *Winch* opined that the claimant's illness was from exposure to a toxin or an allergic reaction to substances while at work. Thus, in *Winch*, medical opinion evidence existed that related the illness to specific events, i.e., exposure to toxins or substances to which the claimant was allergic while he was at work. Moreover, the *Winch* decision cited *Lucas* noting language in *Lucas* related to the presumption of disability having resulted from an accident. Additionally, this court, in *Floyd v. La. Dept. of Public Safety*, 08-899 (La.App. 3 Cir. 2/4/09), 3 So.3d 657, addressed *Winch* as asserting that events occurring at the workplace lead to the resultant condition.

Thus, we find *Lucas* and *Winch* distinguishable from the case before us. Here, Kibodeaux has not asserted that he contracted COVID-19 from an accident, event, or incident occurring at the workplace. A review of this record shows Kibodeaux presented no evidence of any specific occurrence that caused him to contract COVID-19. Specifically, Kibodeaux testified that he had no idea of any incident where he was exposed to COVID-19 or from what person, if any, he may have contracted the virus. He further testified that no person on his crew or anyone he

6

came in contact with at work had COVID-19 before or after he contracted COVID-19 that could have exposed him to the virus.

While Kibodeaux asserts he was on call for 24 hours a day, this assertion, alone, is not sufficient to prove any event(s) occurring at the workplace, hotel, restaurant, or other occurrence which may have led to his contracting COVID-19. Regardless, jurisprudence clearly states that in determining whether the disease at issue is an occupational disease requires that the claimant prove it was contracted during the course of claimant's employment, ***and*** that the disease was the result of the particular nature of the work performed. We find that Kibodeaux has failed to provide any evidence as such.

This court acknowledges that there are no Louisiana appellate cases which directly address whether COVID-19 constitutes an occupational disease. However, the Louisiana Fourth Circuit Court of Appeal has held that "[i]njuries and illnesses resulting from mold exposure in a clerical job do not fall under the definition of La. R.S. 23:1031.1." *Ruffin v. Poland Enter., L.L.C.*, 06-0244, p. 9 (La.App. 4 Cir. 12/13/06), 946 So.2d 695, 700, *writ denied*, 07-0314 (La. 4/20/07), 954 So.2d 163. In that case, the fourth circuit concluded that it could "find no basis in the statutory language or reasonable explanation as to why exposure to mold and mold spores could be considered 'characteristic of and peculiar to' clerical work." *Id.*

Here, there is no evidence, and we find no basis in the statutory language or reasonable explanation that COVID-19 was caused by an occurrence or condition that is "characteristic of and peculiar to" an outdoor oilfield surveyor's job. As to the specific facts of this case, there is simply nothing about COVID-19 specifically to, particular to, or peculiar to Kibodeaux's job as a surveyor for an oilfield company. On the contrary, the ubiquity of this virus precludes us from such a finding. As

discussed, even if COVID-19 could be found to be an occupational disease in certain cases, this is not such a case as Kibodeaux does not know where or from whom he contracted this illness. Accordingly, we find that pursuant to La.Code Civ.P. art. 966(C)(2), Kibodeaux cannot carry his evidentiary burden of proof at trial that the COVID-19 virus he contracted meets the definition of an occupational disease pursuant to La.R.S. 23:1031.1(B).

**WRIT GRANTED, RENDERED AND MADE PEREMPEMPTORY:** **T**he writ is granted, rendered, and made peremptory, reversing the WCJ's judgment denying Realtor, Jan's Construction Company's motion for summary judgment, and the Realtor's motion for summary judgment is granted dismissing the claimant, Jacob Kibodeaux's case against his employer, with prejudice.

**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**23-454**


**JACOB KIBODEAUX**

**VERSUS**

**JAN'S CONSTRUCTION COMPANY, INC.**


**\*\*\*\*\*\*\*\*\***

**SAVOIE, J. concurs and assigns written reasons.**

I agree with the majority opinion based on the facts and circumstances of this particular case. However, there may be a situation in which Covid-19 is considered an occupational disease for the purposes of La.R.S. 23:1031.1(B). As such, it is my position that while the facts of this case do not give rise to an occupational disease claim, it does not mean that Covid-19 may never be found to be an occupational disease pursuant to La.R.S. 23:1031.1(B).