STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-1631


MARJORIE LANE MILLER

VERSUS

CHRISTUS ST. PATRICK HOSPITAL


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 00-09905
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, C.J., Sylvia R. Cooks, and Oswald A. Decuir, Judges.

                                                                    AFFIRMED.


Marcus Miller Zimmerman
910 Ford St.
Lake Charles, LA 70601
Telephone: (337) 433-1414
COUNSEL FOR:
        Plaintiff/Appellee - Marjorie Lane Miller

David L. Morgan
Stockwell, Sievert, Viccellio, Clements & Shaddock, L.L.P.
P. O. Box 2900
Lake Charles, LA 70602
Telephone: (337) 436-9491
COUNSEL FOR:
        Defendant/Appellant - Christus St. Patrick Hospital

THIBODEAUX, Chief Judge.

In this workers' compensation case, the defendant, Christus St. Patrick Hospital (St. Patrick), appeals the judgment of the Workers' Compensation Judge (WCJ), finding that the plaintiff, Marjorie Lane Miller (Mrs. Miller), proved that she was temporarily and totally disabled as a result of her work-related accident and that St. Patrick did not reasonably controvert her claim for workers' compensation. The WCJ awarded Mrs. Miller temporary total disability benefits in the amount of $384.00 per week, $2,000.00 in penalties and $6,000.00 in attorney fees. We affirm. We also award an additional $3,000.00 in attorney fees for work done on appeal.

I.

## ISSUES

1) Was the WCJ manifestly erroneous in deciding that Mrs. Miller was entitled to temporary total disability benefits?

2) Was the WCJ manifestly erroneous in deciding that Mrs. Miller was entitled to penalties and attorney fees.

II.

## FACTS

Mrs. Miller began her employment as a registered nurse with St. Patrick on May 17, 1988. On December 21, 1993, while working as an emergency room nurse, Mrs. Miller was preparing to place a patient in a decontamination tub when the lid from the decontamination tub fell off the wall, striking her in the neck and right shoulder. Prior to this accident, she did not have any problems with her neck and right shoulder.

1

Following the accident, Mrs. Miller was treated by Dr. Lynn Foret, an orthopedist, and Dr. John Raggio, a neurologist. In May of 1995, Dr. Foret referred Mrs. Miller to Dr. Ronald Kober, a thoracic and vascular surgeon. Dr. Kober diagnosed Mrs. Miller with thoracic outlet syndrome (TOS), a nerve compression syndrome where the nerves are compressed as they pass over the first rib going to the arm. Pain in the shoulders, arm swelling and hand numbness are typically associated with TOS.

After her accident in 1993, Mrs. Miller could no longer work in her emergency room position. She was moved to varying positions in the hospital from 1993 to 2000 to accommodate her TOS. St. Patrick paid Mrs. Miller's medical expenses, including physical therapy, medications and treatment with Dr. Foret, Dr. Raggio and Dr. Kober. Mr. Clint Dobson, St. Patrick's claims adjuster, testified that no weekly indemnity benefits were paid to Mrs. Miller because she continued to work after the accident.

Mrs. Miller testified that, starting in January 2000, St. Patrick increased her work load and hours and her right arm and shoulder began hurting more as a result. On March 15, 2000, she drove to Baton Rouge for a job assignment. She testified that, while in Baton Rouge, her right arm and shoulder began to hurt as she was using a laptop computer with a small key board. She reported to Maxine Guillory (Ms. Guillory), St. Patrick's associate health nurse, that she could no longer work because of the aggravation of her TOS. Mrs. Miller did not file an official accident report. St. Patrick did not investigate her complaint. Mrs. Miller stopped working as of March 15, 2000. St. Patrick did not pay any indemnity benefits to Mrs. Miller after she stopped working on March 15, 2000.

On December 13, 2000, Mrs. Miller filed a disputed claim for compensation. St. Patrick filed an exception of prescription on the basis that all of

Mrs. Miller's injuries resulted from the December 21, 1993 accident. Mrs. Miller claimed that the March 15, 2000 incident was a new accident; therefore, her claim had not prescribed. St. Patrick's exception of prescription was denied.

The WCJ found that Mrs. Miller suffered a compensable accident and, as a result, she was temporarily and totally disabled. The WCJ awarded Mrs. Miller weekly indemnity benefits of $384.00. The WCJ also found that St. Patrick failed to reasonably controvert the claim and awarded a penalty of $2,000.00 and attorney fees of $6,000.00. Thereafter, this appeal was filed.

III.

**LAW AND DISCUSSION**

***Standard of Review***

"Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review." *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840, p. 7 (La. 7/1/97), 696 So.2d 551, 556. Under the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. *Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Id.* Accordingly, if the trier of fact's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106 (La.1990).

***Accident***

3

In order to recover benefits, a workers' compensation claimant must establish a personal injury by accident, arising out of and in the course of his employment, under La.R.S. 23:1031 or contraction of an occupational disease under La.R.S. 23:1031.1. Louisiana Revised Statutes 23:1021(1) provides:

> "Accident" means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.

St. Patrick claims that all of Mrs. Miller's injuries were related to her December 21, 1993 accident. St. Patrick contends that the WCJ erred in finding that an "accident" occurred on March 15, 2000, where the evidence established only that there was a progressive degeneration of Mrs. Miller's TOS. It argues that there was no new accident on March 15, 2000. Therefore, Mrs. Miller's claim for compensation had prescribed when she filed it on December 13, 2000. On the other hand, Mrs. Miller claims that she was injured on March 15, 2000, while typing on a laptop. She claims that this accident caused her TOS to be permanently aggravated and she could no longer work. She argues that because of the new accident on March 15, 2000, her claim had not prescribed when she filed it on December 13, 2000. Mrs. Miller argues that an accident may include a subtle and routine movement, like working on a laptop.

Mrs. Miller testified that, at the time of the second accident, she was in Baton Rouge doing laptop training. She was working on a small laptop when she started feeling intense pain. She testified that she had to take medication while on the job and had to take additional medication on the way home. She also testified that her condition has not improved since March 15, 2000.

Dr. Kober testified that he saw Mrs. Miller on March 23, 2000, a few days after her alleged laptop incident. He testified that she was having increased

difficulty with pain in the right upper extremity and weakness and dysfunction of the right upper extremity. He also testified that Mrs. Miller felt that her job, which requires use of a computer, and the stress were making her symptoms worse.

From this testimony, the WCJ concluded that there was an accident on March 15, 2000 that caused Mrs. Miller's symptoms to be permanently aggravated. With regard to her credibility, the WCJ noted:

> And it does, I will admit, sound a little questionable that you could all of a sudden be working on a strange computer and you basically lose functionality of your right arm. I would question that. But, if I questioned it, I would have to ask myself is that reasonable? It sure seems reasonable to me. Based on what everybody has said, she obviously has a problem. I think after that she just gave out. She couldn't work anymore. So, the question is, "Do you believe that's what she did or is she lying?" I don't believe she is, and there's nobody to suggest to me so far that she is not a truthful person.

The WCJ's decision as to whether the testimony is credible or not is a factual determination not to be disturbed on review unless clearly wrong or in absence of showing manifest error. *Gonzales v. Babco Farm, Inc.*, 535 So.2d 822, 824 (La.App. 2 Cir.), *writ denied*, 536 So.2d 1200 (La.1988). The WCJ relied on the testimony of Mrs. Miller and her treating physician in finding that an accident occurred on March 15, 2000. Based on the testimony, we cannot say that the WCJ's finding was manifestly erroneous.

Additionally, the "actual, identifiable, precipitous event" may include a routine movement or task that the claimant regularly performs, if the claimant is able to identify the time, place and manner of the injury. *McCall v. Wal-Mart Stores, Inc.*, 02-1343 (La.App. 3 Cir. 3/5/03), 846 So.2d 832, *writs denied*, 03-1329 (La. 9/19/03), 853 So.2d 639, 03-1343 (La. 9/19/03), 853 So.2d 641. In the instant case, although the event was a routine movement such as typing on a laptop, Mrs. Miller was able to identify the time, place and manner of the event. Further, jurisprudence holds that an

"actual, identifiable, precipitous event" does not exclude those instances where a work-related event, which may seem to be a customary or routine work activity, results in an injury to the employee. *Richard v. Workover & Completion*, 00-794 (La.App. 3 Cir. 12/6/00), 774 So.2d 361.

We find no merit in the employer's argument that an "accident" did not occur within the meaning of La.R.S. 23:1021(1). Accordingly, we affirm the finding that Mrs. Miller's claim had not prescribed and that she is entitled to temporary total disability benefits.

### *Notice*

St. Patrick contends that Mrs. Miller did not give it timely notice of her injury. La.R.S. 23:1301 requires an employee to give notice of an injury to her employer within thirty days of the injury.

Mrs. Miller did report to Ms. Guillory in March of 2000 that she had stopped working and that her TOS was worse. However, she testified that she was not aware to report what happened to her on March 15, 2000 as an incident.

The WCJ noted that it would have been more helpful if Mrs. Miller had formally reported the accident to St. Patrick. However, St. Patrick should have investigated the matter after Mrs. Miller came to St. Patrick's crying and complaining that her TOS was worse.

Mrs. Miller's complaint was sufficient to put St. Patrick on notice that she might have had an accident or, at least, put it on notice to inquire into what caused her TOS to worsen. Moreover, provisions regarding notice of injury should be construed liberally in favor of the employee unless the rights of the employer are prejudiced. *Bolton v. Angelle Concrete,* 93-667 (La.App. 3 Cir. 2/2/94), 631 So.2d

6

110. St. Patrick has not presented any evidence that it was prejudiced by Mrs. Miller's informal report of her accident. Therefore, we find that Mrs. Miller did give St. Patrick sufficient notice within thirty days as required by La.R.S. 23:1301.

### *Penalties and Attorney Fees*

St. Patrick additionally contends that the WCJ erred in awarding penalties and attorney fees. We disagree.

In *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La.12/1/98), 721 So.2d 885, 890, the supreme court stated:

> To determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.

Ms. Guillory testified that she saw Mrs. Miller in the human resource building in March of 2000. She stated that she knew that Mrs. Miller stopped working because her injury was flaring up or hurting. She testified that when she saw Mrs. Miller, she was crying and Mrs. Miller told her that her TOS was worse.

Mr. Dobson recalled that when he took over Mrs. Miller's case in January 2000, he did not pay any indemnity benefits to her because he believed that her claims had prescribed for the December 21, 1993 accident. He testified that there were no prescription claims on Mrs. Miller's file for several months and her account was closed until late January 2000. At that time, he started receiving prescription claims again. He testified that his claim notes indicated that he spoke to Ms. Guillory on March 27, 2000, and that Mrs. Miller called and said that Dr. Kober took her off work

7

for three months or more. However, he stated that he did not investigate whether an accident had occurred. He stated that the reason that he did not investigate the claim was because his client, St. Patrick, did not inform him of any new accident. He also stated that Dr. Kober's medical records did not mention any new accident and only mentioned that working on the computer and stress were making Mrs. Miller's TOS worse.

From this testimony, the WCJ concluded that St. Patrick should have investigated Mrs. Miller's complaint as to why she could no longer work. The WCJ ruled that St. Patrick failed to adequately investigate the claim and, thus, its failure to initiate indemnity benefits was unreasonable. As a result, the WCJ awarded Mrs. Miller $2,000.00 in penalties and $6,000.000 in attorney fees.

"The determination of whether an employer or insurer should be cast with penalties and attorney fees in a workers' compensation action is essentially a question of fact." *Authement v. Shappert Engineering*, 02-1631, p. 12 (La. 2/25/03), 840 So.2d 1181, 1188. Factual findings are subject to the manifest error or clearly wrong standard of review. *Banks*, 696 So.2d at 556. Based on our review of the record, we cannot say that the trial court was manifestly erroneous in finding that St. Patrick did not reasonably controvert the claim. Accordingly, we affirm the award of penalties in the amount of $2,000.00 and attorney fees in the amount of $6,000.00.

***Request for Additional Attorney Fees***

Mrs. Miller has asked for an additional award of attorney fees for work performed on this appeal. As Mrs. Miller correctly noted, a workers' compensation claimant is entitled to an increase in attorney fees to reflect additional time incurred in defending an employer/carrier's unsuccessful appeal. *Hickman v. Allstate Timber Co.*, 94-1275 (La.App. 3 Cir. 4/5/95), 653 So.2d 154, *writ denied*, 95-1133 (La. 6/23/95), 656 So.2d 1017; *Aguillard v. Indus. Const. Co.*, 542 So.2d 774 (La.App. 3 Cir. 1989). Accordingly, based on the record before us, we award an additional $3,000.00 in attorney fees for the successful handling of this appeal.

IV.

## CONCLUSION

For the above reasons, the judgment appealed from is affirmed. We award as additional attorney fees of $3,000.00 for work done on appeal. Costs of this appeal are assessed to Christus St. Patrick Hospital.

**AFFIRMED**.