972 So.2d 344 (2007)
James NOONAN
v.
CITY OF NEW ORLEANS.
No. 2006-CA-1121.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 2007.
William Ken Hawkins, The Work Injury Center of Southeast Louisiana, Ponchatoula, LA, For Plaintiff/Appellant.
Richard L. Seelman, Wayne J. Fontana, Hunter & Fontana, L.L.P., New Orleans, LA, For Defendant/Appellee.
(Court composed of Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS JR., Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
Plaintiff-Appellant, James Noonan, appeals the trial court's judgment granting Defendant-Appellee's Motion for New Trial and dismissing his claims with prejudice. For the reasons that follow, we reverse and remand.
FACTS
Appellant, James Noonan, began receiving workers' compensation benefits in October 1994 for a cardiovascular illness he contracted while employed with Appellee, the City of New Orleans ("the City"), as a *345 firefighter. The City stipulated that Mr. Noonan was permanently and totally disabled as a result of his illness. In January 1995, Mr. Noonan also began receiving his disability retirement pension. Starting in June 2002, the City reduced Mr. Noonan's worker's compensation benefits to offset the annual 3% cost of living increases from his disability retirement pension. In August 2002, Mr. Noonan filed suit to reinstate his full workers' compensation benefits or, in the alternative, to have the court find that the City could take only one offset, calculated upon Mr. Noonan's initial disability pension award, and that the City could not annually recalculate the offset with each increase in Mr. Noonan's disability retirement pension payment. The parties have since stipulated, however, that the City may take the initial offset pursuant to La. R.S. 23:1225(C).[1] Accordingly, the only issue before this Court with regard to La. R.S. 23:1225 is whether the City may incorporate cost of living increases in Mr. Noonan's disability retirement pension when calculating the 23:1225(C) offset.
PROCEDURAL HISTORY
On June 11, 2004, Mr. Noonan filed a Motion for Summary Judgment, which was initially granted by the trial court. In its original judgment on January 10, 2005, the trial court found that the City had no legal authority to annually recalculate the 1225(C) cost of living increase, and further, that the annual recalculation would lead to the absurd consequence of the City eventually paying zero for workers' compensation benefits. The court concluded that LSA-R.S. 23:1225(A), which explicitly disallows annual recalculations for cost of living with regard to federal benefits, was the clearest expression of the legislative intent, and granted Mr. Noonan's motion for summary judgment.
The City subsequently filed a Motion for a New Trial. The Motion for New Trial was granted, and after a hearing on April 18, 2005, the trial court took the matter under advisement. The trial court ultimately reversed its January 10, 2005 judgment in favor of Mr. Noonan and found in favor of the City, effectively combining its judgment on the Motion for New Trial and *346 Amended Final Judgment on August 15, 2005.
STANDARD OF REVIEW
Because the judgment from which Mr. Noonan appeals includes a ruling on his motion for summary judgment as well as a judgment on a motion for new trial, we review the lower courts findings de novo. Reynolds v. Select Props., Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183.
DISCUSSION
Mr. Noonan sets forth two assignments of error. First, he argues that the trial court erred in granting the City's Motion for New Trial, and second, that the merits of the case and jurisprudence require a reversal of the trial court's ruling on the City's Motion for New Trial.
We disagree with Mr. Noonan's assertion that the City's Motion for New Trial was untimely filed. The record reflects that the notice of final judgment was mailed on January 11, 2005. Although the final judgment was signed on January 10, 2005, the cover letter that was mailed to the parties with the judgment is dated January 11, 2005. Louisiana law provides that the delay for filing a Motion for New Trial is seven days from the date the clerk mails the Notice of Judgment:
The delay for applying for a new trial shall be seven days, exclusive of legal holidays. The delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913.
La. C.C.P. art. 1974 (emphasis added). Accordingly, pursuant to Article 1974, the City had seven days, exclusive of legal holidays, from January 12, 2005 to file its Motion for New Trial. January 15, 2005 was a Saturday, and January 16, 2005 was a Sunday, both legal holidays. Likewise, January 17, 2005 was Martin Luther King, Jr. Day, also a legal holiday. Because the record demonstrates that the City faxed its motion to the court on January 21, 2005, we find that the City put forth sufficient evidence to prove that the Motion for New Trial was filed within the limits set forth by Article 1974. This assignment of error is without merit.
With respect to the second assignment of error, we find that the trial court erred in finding that the City is entitled to incorporate cost of living increases in Mr. Noonan's disability retirement pension when calculating the 23:1225(C) offset. While La. R.S. 23:1225 explicitly disallows offsets for cost of living increases in Social Security benefits,[2] the statute is silent with regard to whether offsets may be taken for cost of living increases in workers' compensation benefits. In its written reasons *347 for judgment, the trial court noted that the reason for the legislative distinction between the two was because the cost of living increase for City employees is "employer-funded," while Social Security is federally funded. The trial court's reasons for judgment also cited to the legislative intent behind the statute's limitation to two-thirds of a worker's average weekly wage, namely, the public policy considerations of discouraging malingering and encouraging workers to return to the workforce. In Mr. Noonan's case, however, the public policy considerations are of no moment; because Mr. Noonan is totally and permanently physically disabled, no amount of encouragement or discouragement will allow Mr. Noonan to ever return to the workforce.
We find that the trial court's reasoning in its January 10, 2005 judgment was correct, and that the language in La. R.S. 23:1225(A) prohibiting offsets for cost of living increases is the clearest expression of legislative intent. Workers' Compensation is fundamentally "social legislation through which `employees and employers surrender certain advantages in exchange for others which are more valuable to both parties and society.'"[3]Melancon v. Lafayette Ins. Co., 2005-762, p. 9 (La.App. 3 Cir. 3/29/06), 926 So.2d 693, 702 (citing Deshotel v. Guichard Operating Co., Inc., 03-3511, p. 7 (La.12/20/04) 916 So.2d 72, 77).[4] Additionally, we note the *348 well-established principle that workers' compensation law should be construed liberally to afford coverage. See, e.g., Danielsen v. Security Van Lines, Inc., 245 La. 450, 158 So.2d 609 (1963).
Additionally, a statute's silence cannot automatically be construed as an authorization by the Legislature. See Savage v. Prator, 2004-2904, p. 9 (La.1/19/06), 921 So.2d 51, 56; Willis-Knighton Medical Center v. Caddo Shreveport Sales and Use Tax, XXXX-XXXX, p. 38 (La.4/1/05), 903 So.2d 1071, 1094. It is well-settled that the meaning of a statutory provision is established by reviewing the statute in its entirety. McNamara v. Central Marine Service, Inc., 507 So.2d 207, 209 (La.1987). Moreover, courts must reconcile the various sections of a statute as being a simultaneous expression of legislative intent. Id. In this case, a review of La. R.S. 23:1225 in its entirety reveals no mention of allowing an annual offset for cost of living increases for indemnity benefits. To the contrary, La. R.S. 23:1225(A) expressly prohibits a reduction in benefits for cost of living increases. Because we find no express authority in La. R.S. 23:1225(C) which would allow the City to annually recalculate Mr. Noonan's cost of living adjustment, we conclude that the trial court committed legal error in granting a new trial in favor of the City. As the trial court observed in its original judgment, "such recalculations violate the spirit and intent of the Louisiana Worker's Compensation Act."
Appellees cite to Palisi v. City of New Orleans Fire Department, 95-1455 (La. App. 4 Cir. 3/12/97), 690 So.2d 1018, in support of their position. Although Palisi involved, inter alia, firefighters who disputed offset calculations by the City, we find that the instant case can be factually distinguished from Palisi. In Palisi, this Court held that the City was entitled to an offset for disability retirement benefits in the proportion funded by the employer pursuant to the language in La. R.S. 23:1225(C)(1)(c). Accordingly, the main issue in Palisi with respect to offsets was whether the City had borne its burden of proving in what proportion the benefits were funded by the City, and whether factoring in interest earned on the City's contributions would alter the proportion. Palisi, 690 So.2d at 1037. This Court's decision in Palisi did not make any specific findings with regard to annual recalculation *349 of offsets for cost of living increases. Further, the offset calculations at issue in Palisi were, in fact, explicitly set forth in the language of 23:1225(C)(1)(c); in the instant case, however, the statute is silent with respect to the annual recalculations of cost of living offsets to which the City asserts it is entitled.
CONCLUSION
Because the language of La. R.S. 23:1225(C) does not specifically allow offsets for cost of living increases, and because the Workers' Compensation Act is to be construed liberally in favor of the injured employee, Danielsen v. Security Van Lines, Inc., supra, we find that the City is not entitled to annually recalculate offsets for cost of living increases. Accordingly, the matter is hereby reversed and remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
TOBIAS, J., concurs in the result and assigns reasons.
TOBIAS, J., concurs in the result and assigns reasons.
I reluctantly concur in the result reached by the majority because I find that La. R.S. 23:1225 does not permit even one initial offset under the facts presented in this case.
Section 1225(C)(1), which authorizes a reduction of the workers' compensation obligation when the employee receives other enumerated benefits, is a restriction on an injured employee's right to workers' compensation benefits and must be strictly construed. Jones v. General Motors Co., 03-1766, p. 12 (La.4/30/04), 871 So.2d 1109, 1117 (citing Cousins v. City of New Orleans, 608 So.2d 978, 981 (La.1992)). An employer seeking credit for benefits covered by the statute has the burden of proving both entitlement to and the amount of the credit. Id.
The settled rule of statutory construction that the mention of one thing in a statute implies the exclusion of another thing, i.e., the doctrine of Expressio Unius est Exclusio Alterius, dictates that when the legislature specifically enumerates a series of things, the legislature's omission of other items, which could have easily been included in the statute, is deemed intentional. State Through Dept. of Public Safety and Corrections, Office of State Police, Riverboat Gaming Div. v. Louisiana Riverboat Gaming Com'n and Horseshoe Entertainment, 94-1872 (La.5/22/95), 655 So.2d 292, 302 (citing State ex rel. Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656 (1936); Burgin v. Forbes, 293 Ky. 456, 169 S.W.2d 321, 325 (1943); Newblock v. Bowles, 170 Okla. 487, 40 P.2d 1097, 1100 (1935); Sutherland Statutory Construction, § 47.23 (5th Ed.1992); Earl T. Crawford, The Construction of Statutes, § 195, at 334 (1940)).
As another rule of statutory construction instructs us, when a statute is clear and unambiguous and its application does not lead to absurd consequences, the statute is applied as written, and no further interpretation may be made in search of legislative intent. See La. C.C. art. 9; La. R.S. 1:4. I do not find any ambiguity in the statute at issue.
The statute is silent on whether cost-of-living increases in one's disability retirement pension may be offset when calculating the benefits due pursuant to § 1225(C), while it specifically provides for other types of offsets. In my opinion, had the legislature intended the offset urged by the City, it could have done so by adding an additional sentence to subsection C. Thus, a clear reading of § 1225(C) reveals a prohibition against the offset without analogy to any other part of the statute.
*350 I would further find that the parties are prohibited from stipulating that the City may take even an initial offset pursuant to § 1225(C), if that resulted in the plaintiff receiving less sixty-six and two-thirds percent of his weekly wages. See Jones, supra, at pp. 15-16, 871 So.2d at 1120. Because this issue is not before us, I, therefore, concur in the result reached by the majority.
NOTES
[1] LSA-R.S. 23:1225(C) provides (emphasis added):

C. (1) If an employee receives remuneration from:
(a) Benefits under the Louisiana Workers' Compensation Law.
(b) Repealed by Acts 2003, No. 616, § 1.
(c) Benefits under disability benefit plans in the proportion funded by an employer.
(d) Any other workers' compensation benefits,
then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the workers' compensation benefit, so that the aggregate remuneration from Subparagraphs (a) through (d) of this Paragraph shall not exceed sixty-six and two-thirds percent of his average weekly wage. (2) Notwithstanding the provisions of Paragraph (1) of this Subsection, benefits payable for injury to an employee under this Chapter shall not be reduced by the receipt of benefits under this Chapter or any other laws for injury or death sustained by another person.
(3) If an employee is receiving both workers' compensation benefits and disability benefits subject to a plan providing for reduction of disability benefits, the reduction of workers' compensation benefits required by Paragraph (1) of this Subsection shall be made by taking into account the full amount of employer funded disability benefits, pursuant to plan provisions, before any reduction of disability benefits are made. (4) If a conflict arises between the application of the provisions of this Section and those of any other Louisiana law or contract of insurance, the provisions of this Section shall control.
[2] LSA-R.S. 23:1225(A) provides (emphasis added):

A. The benefits provided for in this Subpart for injuries producing permanent total disability shall be reduced when the person receiving benefits under this Chapter is entitled to and receiving benefits under 42 U.S.C. Chapter 7, Subchapter II, entitled Federal Old Age, Survivors, and Disability Insurance Benefits, on the basis of the wages and self-employment income of an individual entitled to and receiving benefits under 42 U.S.C. § 423; provided that this reduction shall be made only to the extent that the amount of the combined federal and workers' compensation benefits would otherwise cause or result in a reduction of the benefits payable under the Federal Old Age, Survivors, and Disability Insurance Act pursuant to 42 U.S.C. § 424a, and in no event will the benefits provided in this Subpart, together with those provided under the federal law, exceed those that would have been payable had the benefits provided under the federal law been subject to reduction under 42 U.S.C. § 424a. However, there shall be no reduction in benefits provided under this Section for the cost-of-living increases granted under the federal law after the date of the employee's injury.
[3] Essentially, "[t]he employee waives the right to sue his employer for damages, if he is injured in the course and scope of his employment, in exchange for receiving workers' compensation benefits, and the employer limits his financial liability for such injuries in exchange for paying workers' compensation benefits." Melancon, supra, 926 So.2d at 702.
[4] In Deshotel, supra, the Louisiana Supreme Court explained in great detail the policy and purpose behind the Workers' Compensation Act:

Prior to the enactment of Louisiana's workers' compensation scheme, employees injured or killed in workplace accidents pursued traditional tort remedies to compensate them for their damages. 13 WEX S. MALONE H. ALSTON JOHNSON, III, LOUISIANA CIVIL LAW TREATISE: WORKERS COMPENSATION LAW AND PRACTICE § 31 at p. 33 (2002). However, the injured worker was placed at an extreme disadvantage when litigating his claims since fellow employees were often reluctant witnesses torn between loyalty to the injured party and fear of reprisal from the employer. Id. In addition, employees often compromised their claims for a fraction of the full value when faced with the expenses and delay associated with litigation. Id. Those employees who were able to prove employer fault and recover a damage award often forfeited a large portion of any recovery received paying contingency fees. Id. As a result, the financial burden placed upon the employee and his or her family resulting from injury or death was often borne by organized charities or the state. Id.
In 1914, in response to learning that the available tort remedies were ineffective, the Legislature adopted the Employers' Liability Act, Act No. 30 of 1914, which persisted until 1975 without basic change. Id. at § 36, p. 44. In 1975, The Louisiana Workers' Compensation Act in its present form was adopted from the original Employers' Liability Act. The Act rests upon the sound economic principle that consumers who enjoy the product of a business-whether it be in the form of goods or services-should ultimately bear the cost of the injuries or deaths that are incident to the manufacture, preparation and distribution of the product. Id. at § 32, p. 34. Under the compensation principle, the expected cost of injury or death to workers can be anticipated and provided for in advance through the medium of insurance, and the premiums can be regarded as a production cost when fixing the price of the commodity or service. Id. The purpose of the Act was to create a compromise in which both employees and employers surrender certain advantages in exchange for others which are more valuable to both parties and society. Id. at § 32, p. 35. For example, under the compensation scheme, the employee relinquishes his right to be made whole in a civil suit, while the employer cedes his available tort defenses Id. As this Court stated in Atchison v. May, 201 La. 1003, 10 So.2d 785, 788 (1942):
The act, which is social legislation, was passed for the joint benefit of labor and management in order to insure that employees who have become disabled as a result of their labors in hazardous industries would have, during the period of their disability, a weekly income for the upkeep of themselves and their families. It was also deemed advisable to provide for compensation, in cases of death to the persons dependent upon the employee for support so that these persons would not be entirely bereft of funds during the period of time following the employee's death when they, of necessity, were compelled to reconstruct their lives and seek a means of support,-thus avoiding the possibility that these persons would become public charges. In order that this end might be accomplished, the Legislature provided for sacrifices to be made by both the employer and the employee. The employee was required to waive the right granted him under the general law, Article 2315 of the Civil Code, in consideration of receiving a fixed percentage of his wages during the period of his disability. The employer, on the other hand, was deprived of the defenses afforded to him by the general law and he was assured that, in case any of his employees were injured, they would be entitled to no more than the amount stipulated in the statute as compensation during the period of disability.
Deshotel, supra, 916 So.2d at 76-78.