MARION F. EDWARDS, Judge.
12Tammy A. Townsend, plaintiff/appellee (“Mrs.Townsend”), a bus driver who worked for the Jefferson Parish School Board, defendant/appellant (“Board”), was injured on December 4, 2007, while in the course and scope of her employment. In March 2009, she filed a Disputed Claim for Compensation, alleging that the rate of compensation was incorrect. She also asked for penalties and attorney’s fees.
At trial, the parties stipulated that Mrs. Townsend was injured in the course and scope of her employment with the Board and that, since the accident, she has been temporarily totally disabled.
Mrs. Townsend’s deposition was admitted in lieu of her testimony. She has been driving for the Board since 1998. For the four years before the accident, she also drove a “pony” route delivering mail for the school systems, delivering in-house mail to different schools. For this she used a Board-owned van. She was driving this van when the accident occurred.
|3In addition to the funds earned for the pony route, Mrs. Townsend also transported students for an organization known as the New Orleans Chapter of Young (NOCY). She picked them up from Mar-rero Middle School and brought them home. The students were there for extended learning time. This program began around the time tutoring for the LEAP program began, and it was extended during the summer. Mrs. Townsend was directed to make trips for the NOCY by the principal of Marrero Middle School. The principal of each high school that a driver drives for is the driver’s supervisor, although there is someone in the central office who is also a supervisor. Mrs. Townsend was told that the funds would come from NOCY. Income tax forms in the record show the income for Mrs. Townsend from NOCY as “non employee compensation.” Someone from NOCY would meet the students when dropped off at school. Mrs. Townsend believed she was covered for these trips by the Jefferson Parish insurance policy.
She has also used her bus to transport passengers to Jazz Fest, which is not connected to the Board.
At trial, Jane Patton testified as the coordinator of self-insured programs for the Board. She manages and monitors workers’ compensation claims. She testified that Mrs. Townsend held two jobs. Her full-time job was as an owner/operator bus driver with a part-time position as driver for the “pony” route. The School Board has a lease agreement on the buses for duties performed for the Board. The drivers’ duty is to transport children to and from school and on school field trips. The buses can be used for any other purposes, but the driver is required to buy his own insurance for these trips outside of Board business.
After the accident, Mrs. Townsend was paid workers’ compensation. At one point, compensation was temporarily reduced because, as school bus driver, she was entitled to some funded leave benefits not available to a pony driver.
|4Originally, compensation was calculated on Mrs. Townsend’s base pay, which is *131 the regular route mileage on the regular committed routes to and from school. However, some of the summer school programs and the field trips do not route through the regular payroll deck, but from substitute payroll. This money is calculated into wages for income tax purposes, but it does not appear on the computer screen in the personnel department as wages. The Board does have this information in its system. Previously, these extra wages had been paid out of school activity accounts, but, at some point, the payments became centralized. Ms. Patton was unaware this change had been made, although it happened some time ago. Ms. Patton included these wages when Mrs. Townsend provided her with a printout of the extra trips.
Mrs. Townsend disputed the amount of her wages in July 2009, urging that compensation should have been calculated to include monies earned while driving the bus for the LEAP program and for NOCY. Ms. Patton took sick leave in July and August of that year. When she returned, compensation was recalculated to reflect extra wages earned for the LEAP program, and benefits were paid retroactively. Benefits for earnings from NOCY were denied because NOCY is not affiliated with the Board in any way.
Summer school programs include remedial summer school, programs for special education children, and LEAP remediation. Those programs are managed by the school system. NOCY was not managed by the Board; the litmus test is whether the activity comes through their payroll department. The insurance does not cover permissive activities, especially when paid from another payroll source.
The principals of the schools are not directly in a supervisory capacity over the drivers, and the driver should know what is legitimate for a principal to direct her to do.
[¡¡Following trial, the trial judge ruled that Mrs. Townsend had been paid benefits at an incorrect rate. She found that the Board had the information regarding Mrs. Townsend’s driving for the LEAP program and the Intersystem Mail Delivery but chose to ignore it and did not reasonably controvert their failure to pay all benefits due in a timely or accurate manner. The court apparently determined that the NOCY trips were connected to the LEAP program and, further, that the Board provided insurance coverage for the trips paid for by NOCY. Multiple penalties of $4000 and attorney’s fees of $5000 were assessed.
On appeal, the Board alleges the trial court committed manifest error in failing to find that NOCY was a separate entity from the Board and in failing to find that the Board was correct in not including those monies paid by NOCY in its compilation of Mrs. Townsend’s average weekly wage. The Board urges that the trips paid by NOCY were separate from her employment with the Board, just as were extra trips she made transporting individuals to Jazz Fest and, therefore, the Board was not her employer for those purposes. It contests the findings relative to wages involving NOCY, and it also urges that the claim was reasonably controverted.
The record does not disclose the exact status of NOCY and its relationship to the Board. However, it is apparent that Mrs. Townsend was requested to run these extra trips by a representative of the Board, the principal of Marrero Middle School. Further, it appears from the unrefuted testimony of Mrs. Townsend that these trips were connected to the LEAP program, which program Ms. Patton agreed was managed by the Board.
*132 Ijt is a well-established principle that workers’ compensation law should be construed liberally to afford coverage.[1] Factual findings in a workers’ compensation case are subject to the manifest error or clearly wrong standard of appellate review.[2] The determinations by the workers’ compensation judge as to whether the claimant’s testimony is credible and whether the claimant has discharged his burden of proof are factual determinations and will not be disturbed upon review in the absence of manifest error or unless clearly wrong.[3]
The fact that NOCY paid Mrs. Townsend is not determinative of the employer/employee relationship.[4] The record supports a conclusion that Mrs. Townsend was performing services for the Board when these wages were earned. On review, we cannot say that the trial court was manifestly erroneous in its finding that the wages should be included in computing workers’ compensation for Mrs. Townsend.
Although the Workers’ Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed.[5] Penalties for failure to pay compensation timely do not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.[6] The determination of whether an employer or insurer should be cast with penalties and attorney’s fees in a workers’ compensation action is essentially a question of fact.[7]
|7The employer has a continuing duty to investigate, assemble, and assess factual information. Here, the trial court found that the Board had control of the information regarding Mrs. Townsend’s work and income but chose to ignore it. Ms. Patton testified that the Board’s computer program used to calculate benefits was not set up to include extra wages earned, and Ms. Patton was not aware that the system had been centralized, although the “litmus test” is whether the activity comes through their payroll department.
The record shows that Ms. Patton investigated whether NOCY was affiliated with the Board and discovered that it was a separate entity. She relied on this information in originally calculating Mrs. Townsend’s average weekly wage and compensation. In a subsequent investigation, the matter was corrected and the wages recalculated, resulting in corrected payments. We have difficulty concluding that the Board “chose to ignore” information, which it did not have. Under these circumstances, we find the claim was reasonably controverted. We find the trial court in *133 correctly assessed penalties and attorney’s fees on this issue.
For the foregoing reasons, we reverse the portion of the judgment insofar as it awards penalties and attorney’s fees for failure to include NOCY payments in the compensation benefits. The judgment is amended to reflect that Mrs. Townsend is entitled to $2000 in penalties and $2500 in attorney’s fees. In all other respects, the judgment is affirmed.

REVERSED IN PART, AMENDED AND AFFIRMED.

. Noonan v. City of New Orleans, 06-1121 (La.App. 4 Cir. 11/14/07), 972 So.2d 344, writ denied, 07-2431 (La.2/15/08), 976 So.2d 180. Also, Hayes v. New Orleans Voodoo Football, Inc., 07-1037 (La.App. 5 Cir. 4/29/08), 985 So.2d 259.

. Banks v. Indus. Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556.

. Bruno v. Harbert Int'l, Inc., 593 So.2d 357, 361 (La.1992).

. See, Book v. Police Jury of Concordia Parish, 59 So.2d 151 (La.App. 2 Cir.1952). See also, 13 La. Civ. L. Treatise, Workers' Compensation Law and Practice § 52 (4th Ed.).

. Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41; Porter v. Pellerin Const. Co., 06-949 (La.App. 5 Cir. 4/11/07), 958 So.2d 7.

. La. R.S. 23:1031(F)(2).

. Authement v. Shappert Eng’g, 02-1631, p. 12 (La.2/25/03), 840 So.2d 1181; Miller v. Christus St. Patrick Hosp., 03-1631 (La.App. 3 Cir. 4/21/04), 872 So.2d 574, writ denied, 04-1196 (La.10/1/04), 883 So.2d 1010.